## BAKER *v.* BAER.

### Opinion delivered October 27, 1894.

1. *Assignment—Withholding assets—Exemptions.*

     A deed of assignment conveyed all of the lands and other property of the assignor "except what are exempt to him by the laws of the State," the exemptions claimed being fully described in a schedule attached.    The lands therein claimed were never impressed with the character of a homestead. *Held*, that, since exempt property only was reserved, the title to the land claimed as a homestead passed to the assignee; but if it were not so, there was no intentional withholding of assets to defraud creditors, since the property was conspicuously pointed out.

2. *Effect of subsequent fraud of assignee.*

     The conduct of an assignee, subsequent to the execution of the deed of assignment and not done in pursuance of a contemporaneous agreement, will not vitiate the assignment.

3. *Assignment—Partnership.*

The rule that a partner has no implied power to make an assignment of all the effects of the partnership, including the means for carrying it on, does not inhibit the real owner of a mercantile business from making an assignment thereof, although he had represented himself as having partners in the business.

Appeal from Sharp Circuit Court.

JOHN B. McCALEB, Judge.

STATEMENT BY THE COURT.

On the 11th of January, 1892, S. L. Guthrie made an assignment for the benefit of creditors with preferences. J. B. Baker, interpleader and appellant, was the assignee. To him was assigned (quoting from the deed) "all and singular the lands, tenements, hereditaments, and appurtenances, goods, chattels, accounts, promissory notes, debts, choses in action, claims, demands, property and effects of every description belonging to the said party of the first part" (the assignor), "or in which he has any interest or right, now due or payable or to become due or payable, to the party of the first part, except what are exempt to him by the laws of the State of Arkansas, the same being fully and particularly described in a schedule thereof hereto annexed and marked schedule "A." The real estate herein conveyed is all situated and lying in Izard county, State of Arkansas; is more particularly described however, as follows, to-wit:" (Then follows a description of the land conveyed, embracing among others the land contained in a claim of exemptions attached to the assignment). The *habendum* clause contained, *inter alia*, the following: " To have and to hold the same, and every part and parcel thereof, unto the said party of the second part, his heirs, executors, administrators and assigns, in trust nevertheless." (Then follows the purposes of the trust and directions to assignee). Attached to the deed of assignment were schedules containing a list of debts

secured and a description of the property conveyed ; also the following "claim of exemptions:"   "Samuel L. Guthrie, assignor to J. B. Baker of the property and effects, real and personal, which he owns, for the benefit of all his creditors in said assignment and schedule thereto, has included all his property of every description, reserved from sale, in said assignment, his homestead and exemptions, and now annexes to said assignment this, his schedule of property which he claims as his homestead, and property exempted under the constitution of the State of Arkansas, to-wit :  " The southwest quarter of the southwest quarter and the southeast quarter of the southwest quarter of section twenty-eight, and west half of the northwest quarter of section thirty-three, containing, by estimation, one hundred and sixty acres."   Then follows a list of personal property amounting to $448.   The deed was properly acknowledged.   There is no objection to its form, except that it is verbose and long, and for that reason we have only set out such parts of it as are necessary for the consideration of the issues raised.

On the 18th of January, 1892, Baer, Seasongood & Company sued S. L. Guthrie, W. G. and John W. Hastings, under the firm name of S. L. Guthrie & Company, for the sum of six hundred and fifty-nine dollars.   They also caused an attachment to be issued, which was levied by the sheriff upon the property in controversy.   The sheriff returned the property as that of S. L. Guthrie & Co.   The proceeds of such of the property as was sold under the order of the court was reported to the court. Guthrie alone filed a traverse of the attachment.   Judgment was rendered against the defendants, and the attachment sustained.   J. B. Baker, the appellant, filed his interplea.   That issue was tried by jury, whose verdict was against him, and he appeals.

*Rose, Hemingway & Rose* and *R. H. Powell* for appellant.

1. An assignment cannot be vitiated by matters *ex post facto*. If the assignee misdemeans himself, it is a cause for removal, but does not impair the validity of the conveyance. 18 Ark. 124; *Id.* 172; 54 *id.* 124; 53. *id.* 88.

2. The sixth instruction was abstract. There was no evidence of a partnership. 8 Ark. 183; 16 *id.* 651; 42 *id.* 58. Guthrie owned all the property assigned. 17 A. & E. Enc. Law, 1046; 6 Lea, 119.

3. The seventh and eighth instructions were erroneous. There was no foundation for them. Guthrie reserved nothing. He conveyed all to the assignee, reserving only his exemptions. Even if the assignment and clause of exemptions be construed as one instrument, the exemption would only be an exception from the grant, and make it a *partial* assignment, which is good in the absence of insolvency laws. Burrill, Assignments, sec. 155; Bump, Fr. Conv. 369; Burrill, Ass. sec. 187; 35 N. W. 47; 69 Wis. 561; 13 S. & M. 22; 19 N. Y. 520; 22 Tex. 709; 49 Pa. St. 465; 36 *id.* 258; 61 Wis. 293, *Id.* 335; 21 Kas. 707.

4. Independent frauds of the grantor will not vitiate a conveyance. To have that effect they must enter into it and form a part of it. 10 S. W. 824; 16 N. E. 912; 39 N. W. 660; 70 Wis. 272; 4 U. S. Ap. 69; 122 U. S. 450.

*Yancey & Fulkerson* and *Morris M. Cohn* for appellees.

1. There may be errors in the instructions, but they are not prejudicial. The facts are undisputed, and the verdict could not have been different if the jury had been correctly instructed. 54 Ark. 289, 303; Mansf. Dig. sec. 5083.

2. Guthrie undertook to exempt from the assignment certain real estate as his homestead, which *was not* his homestead. He had never lived on it, or used it as a homestead. This reservation avoided the assignment. 31 Ark. 466; 29 *id.* 289; 23 Iowa, 210; 1 Iowa, 435; 11 Allen, 38; 46 Ark. 405; 53 *id.* 81–86; 85 N. Y. 464; 59 Miss. 69; 19 Pac. 346; 8 Kas. 574; 5 Kas. 324; 54 Ark. 418.

3. One partner has only the right to assign partnership assets to a trustee for the benefit of creditors, without preferences, in the name of the firm, where the other partners have invested him with the power to do so. 37 Ark. 228; 40 *id.* 551; 52 *id.* 556; 17 Vt. 390; 1 Harr. 172; 13 Minn. 412; 30 N. Y. 344; Burrill, Ass. (3 ed.) sec. 86; 1 Bates, Part. secs. 338, 403–4–5; 36 Ark. 612.

4. The ninth instruction is sustained by 53 Ark. 88; 22 S. W. Rep. 342; 13 *id.* 515.

5. It was not error to admit the statement of S. L. Guthrie & Co. It tended to prove the partnership, and fraud. 43 Mich. 454. The intent of the assignors was the sole criterion at the time of the assignment. Acts 1887, p. 194; 51 Ark. 56; 50 *id.* 314. Their representations, upon which appellees acted, operated as an estoppel. 48 N. W. 771; 55 Ark. 296; 54 Miss. 308; 41 Miss. 64.

WOOD, J., (after stating the facts.) 1. Neither the deed of assignment, nor the claim of exemptions thereto attached, justifies the conclusion that there was a withholding of any real estate by the assignor. The granting clause of the deed is all-embracing as to the earthly possessions of the assignor, "except what are exempt to him by the laws of the State of Arkansas." The lands conveyed were specifically described in the deed and schedule, and the land claimed by the assignor as a homestead was included.

The law, upon the evidence of the assignor, determines that the lands claimed as a homestead were never so impressed, and therefore are not exempt. Hence the title passed absolutely to the assignee. The language of the granting clause is unambiguous, and should be held to mean what it says. Only property "exempt" was reserved. This property was not exempt. Therefore, this property was not reserved. Nothing could be plainer. . This is not a case of *conveying all in the deed*, and at the same time secretly or intentionally withholding a portion for the debtor's benefit. All was conveyed by the definite description, and this, so far as the deed itself, and the claim of exemptions thereto attached, is concerned, argues most strongly the good faith and honesty of the transaction.

But if the land claimed as a homestead was in fact reserved, it would not follow that there was an intentional withholding of valuable assets to defraud creditors. Appellee contends that Guthrie knew, or should have known, that the land claimed was not exempt. Suppose he did. If withheld, it was not exempt from the claims of creditors; and, this being so, the assignor could hardly have adopted a more effectual method of inviting anxious creditors to subject it to their demands. It was "conspicuously pointed out" to creditors in the deed, and is a cogent reason for saying there was no fraudulent withholding. A reservation of the kind mentioned would not invalidate the assignment. *German Bank* v. *Peterson*, 35 N. W. 47; *Ingraham* v. *Grigg*, 13 S. & M. 22; *Carpenter* v. *Underwood*, 19 N. Y. 520; *Baldwin* v. *Peet*, 22 Tex. 709; *Heckman* v. *Messinger*, 49 Pa. St. 465; *Knight* v. *Waterman*, 36 *id*. 258; *Goll* v. *Hubbell*, 61 Wis. 293; *First Nat. Bank* v. *Hackett*, *id*. 335; *Dodd* v. *Hills*, 21 Kas. 707.

The seventh instruction, therefore, which told the jury "that the land claimed by Guthrie as a homestead

should not have been reserved from the assignment, and such a reservation would render the assignment fraudulent and void," was erroneous and prejudicial. This disposes also of the eighth.

2. The third and ninth were likewise erroneous, abstract and misleading. There was no proof whatever that the assignee took possession of any of the property assigned before filing his inventory and bond. The only proof upon the subject is to the contrary. The assignee testified that he did not take possession of any of the property until after he had filed his bond and inventory. He brought replevin for some mortgaged property, but did it because he apprehended the mortgagor was about to make way with it. Never got possession of it. He assisted the assignor, at his request, in making his inventory attached to the deed, and copied from it. Knowing that said inventory was correct, he advertised the property for sale after he had filed his bond, and while he was making the inventory. The assignor testified that the assignee made and filed his bond as such assignee, and was making his inventory, when, before it was completed, and before assignee had received possession of the property, the attachments were levied. Instructions, therefore, assuming that the assignee might have committed a fraud in taking charge of the property or executing the trust were abstract and prejudicial. They were likewise erroneous in assuming that any conduct of the assignee subsequent to the execution of the deed of assignment would render it void. *Hempstead* v. *Johnson*, 18 Ark. 124; *Cornish* v. *Dews*, *id*. 172; *Lowenstein* v. *Finney*, 54 Ark. 124; *Excelsior Mfg. Co.* v. *Owens*, 58 Ark. 556; Burrill on Assignments, sec. 320, p. 440.

*2. Effect of subsequent fraud of assignee.*

Of course the requirements of the statute must be pursued where parties make and undertake to carry out an assignment under it. And, as has been held by this

court, the assignor must not deliver, nor the assignee take possession of, the assigned property in pursuance of a contemporaneous agreement, whether parol or expressed in the deed, before inventory and bond are filed. Such conduct will vitiate the assignment. *Smith* v. *Patterson*, 57 Ark. 537; *Gilkeson-Sloss Com. Co.* v. *London*, 53 Ark. 88.

3. Evidence held not to establish partnership.

3. The court in the sixth instruction for appellee told the jury "that if the property assigned belonged to a partnership of which Guthrie was a member, he would have no power to assign it, and their verdict should be against the interpleader."

In addition to the facts already appearing in the statement as to the partnership, a letter of Baer, Seasongood & Co., dated September 21, 1891, to S. L. Guthrie & Co., asking of said company a statement of its business affairs, was introduced; also the statement made in response to said letter. After setting out the various items, in answer to the questions propounded, the statement concludes as follows: "The above statement, both printed and written, has been carefully read by us, and is a full and correct exhibit of our financial condition, which we make for the purpose of obtaining credit from Baer, Seasongood & Co., St. Louis, Mo., for merchandise which we may now or hereafter purchase from them. (Signed) S. L. Guthrie & Co., by Guthrie, a member of the firm."

S. L. Guthrie testified as to the partnership as follows: "About February, 1891, I offered to take in as partners J. W. and W. G. Hastings, if they would put in three or four thousand dollars. They assented, provided I could use their promissory notes for that amount with my merchants; but, not being able to use them, I returned the notes to them in four or five days after I received them. It was still agreed that they should become my partners the next fall by putting in the

amount agreed on, and that in the meantime I should use their names. I did so until about the 10th of October, 1891, when they told me they could not raise the money, and could not become my partners, and requested me to use their names no more. They were never in fact my partners. They never contributed a cent of capital, never received or claimed any interest in the business, and never took anything from it. They were my customers, and I kept accounts against them as against my other customers, and collected them in the same way."

It is unnecessary for us to discuss the question as to whether a partner has the right to make assignment of all the partnership assets to a trustee for the benefit of creditors with preferences, in his individual name and without the assent of his copartners. It may be conceded, and has been decided by this court, that such a thing cannot be done; that "an assignment of all the effects of the partnership, including the means necessary for carrying it on, is not within the scope of a partner's implied powers." *Drake* v. *Thyng*, 37 Ark. 228.

The appellee assumes that there was a partnership. There is no proof of one. The fact that appellees sued S. L. Guthrie, J. W. and G. W. Hastings, and obtained judgment against them under the firm name of S. L. Guthrie & Co., and that the attachment was issued and levied upon the property in controversy as the property of the firm, did not establish the fact that the partnership existed, or that the property levied upon was its property. The record does not show that such an issue was raised in the action for debt. It is not shown that either of the Hastingses filed an answer. Whether the judgment was obtained against them by default, or otherwise, does not appear. They are not here complaining. The testimony of S. L. Guthrie, uncontradicted, shows that they had no interest whatever in his business, did not contribute to the capital of the business,

and never received anything from it.    He explains how their names were used, and that, after the 10th of October, 1891, he, at their request, and upon their failure to comply with the conditions upon which they were to form a partnership, ceased to use their names any more.    So that, if the partnership ever existed, the proof is that it had ceased long before this assignment was made.    The most that could be claimed upon the proof on the partnership question is that it was a *mere holding out*—not an actual partnership *inter sese*—and, such being the case, there was nothing to inhibit Guthrie from making the assignment.    He was the real owner of the business. 17 A. & E. Enc. p. 1046, U.; *Whitworth* v. *Patterson*, 6 Lea, 119; *First Nat. Bank* v. *Hackett*, 61 Wis. 335.

4.    The statement signed " S. L. Guthrie & Co., by S. L. Guthrie, a member of the firm," was admissible.    It was a statement, as the proof shows, of Guthrie's assets but a few months prior to the assignment, and was made out by Guthrie himself, though in the firm name, as a basis of credit.    It tended to show the existence of a partnership at the time it was made.; and, as what is once shown to exist is presumed to continue until the contrary appears, it was admissible to go to the jury for the purpose of showing a partnership, and was subject to any explanations that could be made of it.    The man who made it fully explained it.    1 Greenleaf, Ev. 41.

It is not necessary to discuss the propositions of law presented by appellant and refused.    For the error indicated the judgment is reversed, and cause remanded.