ROBINSON vs BELT.

Opinion delivered June 8, 1899.

1. *Decision of Supreme Court of Arkansas.*

The decision of the Supreme Court of Arkansas on Statutes of Arkansas, rendered before the extension of such statutes over the Indian Territory are binding upon the Courts of the Territory.

2. *Deed of Assignment—Wrongful schedule of property not exempt.*

A deed of assignment which conveys all of the assignor's property, except such property "as is exempt under the law," and which schedules as exempt property, which as a matter of law, is not exempt, is not invalid by reason thereof.

3. *Assignment for Benefit of Creditors—Exaction of Release.*

An assignee for the benefit of creditors, who conveys all of his property to his creditors, but names certain creditors as preferred creditors, may exact releases from such preferred creditors as a condition of such preference.

4. *Attachment—Intervener—Amount of Recovery.*

The proceeds of the attached property were deposited in a bank, designated as a U. S. Depository. The bank failed before the

distribution of the proceeds, and failed to pay in full. *Held*, Whatever rights intervenor had were fixed by the date of the filing of his interplea, and he was entitled to recover the full amount of the proceeds of the attached property.

Appeal from the United States Court for the Northern District.

WM. M. SPRINGER, Judge.

In an action by J. M. Robinson & Co. against J. C. Belt, C. M. King interpleaded, seeking to recover the value of property attached and sold by Robinson & Co., which had been conveyed to King, as assignee for benefit of creditors, by Belt. From an adverse judgment, Robinson & Co. appeal. Affirmed.

John C. Belt, a resident of Arkansas, and a licensed trader at Eufaula, Ind. T., on the 29th of December, 1891, made an assignment for the benefit of his creditors to C. M. King, as his assignee. On the following day the appellants brought suit against Belt, and sued out an attachment and levied upon the property assigned. Belt failed to plead, and judgment by default was taken against him, and attachment was sustained. On May 31, 1892, King filed his amended interplea, setting out deed of assignment, and claimed the property levied upon as his by virtue of said deed. King filed his bond as assignee and inventory of the property with the clerk of the court. The property attached was sold by order of court, and proceeds paid into court, before the interplea was filed. At the May term, 1892, a demurrer to the interplea was filed, and sustained by the court, from which order King sued out a writ of error to the United States court of appeals. King gave no supersedeas bond, and the fund was, by order of court, distributed pro rata to the attaching creditors, according to their priorities. The fund

had been deposited in a bank designated as a United States Depository. The bank failed, and only 87 per cent. of the fund was recovered and distributed. The fund amounted to $7,900. The court of appeals reversed the judgment on the demurrer (11 C. C. A. 39, 63 Fed. 90,) and on September 19, 1895, the appellants filed their answer to the interplea, denying that King was owner by virtue of the deed of assignment, and alleging that the deed of assignment was fraudulent and void; denying that King filed a complete inventory; denying that certain personal property described in the deed of assignment was the property of the wife of John C. Belt; and admitting that the property described in the deed was levied upon by the United States marshal under the attachment. On December 15, 1893, an agreement and stipulation was made and entered into, which, among other provisions, contained the following: "That the said attaching creditors will file no answer nor interpose no (any) defense to the claim of the intervener excepting as to matters of law arising upon the pleadings, and no issues of fact as to the value of the property in suit, for the conversion and value of which intervener seeks to recover in this suit and other suits, as per agreement on file in this cause by and between all the parties interested herein; and that this agreement be made a part of the record in this and all other causes similarly situated as per agreement herein heretofore filed." Several suits had been instituted, and attachments issued and levied, and an agreement had been entered into on May 12, 1892, that they should all abide the results of this case. Said agreement contains the following stipulations, after giving the style of the different suits, viz.: "* * * And in all of which it is proposed to file an interplea on the part of C. M. King, as assignee of John C. Belt; that the pleadings filed in said cause No. 1,285, and those filed with reference to any interplea growing out of said suit shall be adopted and considered as filed in all of the other

above mentioned cases, and that similar orders shall be considered as entered in all of said above-mentioned causes; and a judgment similar to the judgment entered in said cause No. 1,285, or upon any interplea growing out of said cause, shall be entered in all the other of said above mentioned and numbered causes; and that, in the event of any writ of error or appeal being sued out or taken for a review of any judgment entered in said cause No. 1,285 or the interplea growing out thereof, that such writ of error or appeal shall be considered as applying to all judgments entered in the other of the above numbered and mentioned causes, and the judgments in all of such causes shall be held subject to the order or judgment that may be rendered by any appellate tribunal upon any such writ of error or appeal in said cause first above mentioned." This agreement is in part the agreement mentioned in the above quotation from the agreement made December 15, 1893. The case was tried upon the issues made by the pleadings and during the trial, and before the same was submitted to the jury, on, to wit, September 23, 1895, the plaintiffs below and appellants here asked to amend their answer, setting up the fact that the fund had been distributed by the former order of the court to the various attaching creditors: "And there is now no fund or proceeds in court which the interpleader can recover in this action, or to or in which the interpleader had any right." Defendants excepted to the allowance of said amendment by the court for the reason that it would be in violation of the stipulation of December 15, 1893, and demurred also to the said amended answer, "because said plea sets up no defense to interpleader's cause of action, and constitutes no defense to his right to recover." The court sustained the demurrer in the following opinion, to which plaintiffs excepted: "As this is a legal question to be decided by the court, the question may be decided now that this amendment to the answer does not set forth, in the opinion of the court, a legal de-

fense to the interplea of King in this case; that the rights of King as an interpleader at this time relate to the time of his filing his interplea, and that, he himself having done nothing between that time and this to forfeit his right to that claim, he stands there now as he stood upon the day of filing his interplea, and is entitled to all the rights he had then to this property, or to the proceeds thereof; and that nothing but the decision of the courts in the final adjudication of this case can determine what his rights are, but, when they are decided, that it will be decided as of that day, and not of today. Therefore the court holds that the amended answer in this particular does not present a legal defense to the interplea in this case." The case was thereupon submitted to the jury under the charge of the court, which was as follows, to wit: "First, That the interplea filed in this case by C. M. King states a good cause of action for the recovery of the attached property or its proceeds, and, if the jury believe from the evidence that the averments in said interplea are substantially true, they will find for the interpleader, C. M. King. But, if they believe from the evidence that said averments are not substantially true, they will find for the plaintiffs, J. M. Robinson & Co. Second. That the reservation to the assignor, in his deed of assignment in this case, as exempt, of property which he did not own or control, by mistake of the assignor, does not make the assignment void if in fact he conveys, regardless of such reservation, all the property of the assignor not exempt from execution sale; and the assignee, who is the interpleader in this case, may prove by oral evidence that any portion of the property mentioned in the deed of assignment was not the property of the assignor, but was inserted in the deed by mistake. Third. That the only substantial question presented in this case at this time is whether certain household furniture situated in Eufaula, and a pair of mares, a buggy, and a harness which were set forth in Schedule C,

which is a part of the said deed of assignment, were at the time of executing said deed the property of the assignor, J. C. Belt, or were the property of his wife, and were inserted in said deed by mistake; and if the jury believe from the evidence that said property was at the time of executing said deed the property of the wife of J. C. Belt, and was inserted in said deed by mistake, they will find for the interpleader, C. M. King. Fourth. That the claim by the assignor, J. C. Belt, in his deed of assignment, as exempt from execution sale, of certain items of personal property of inconsiderable value,—such as wearing apparel, valued at $40, a gold watch, valued at $25, two lamps, valued at $1.50, a chair, valued at $3, and a trunk, valued at $5,—when in fact such articles, by reason of their location in the Indian Territory, wore not exempt from execution sale, such claim, if not made for the purpose of defrauding creditors, will not render the assignment void." The jury found the issues for the interpleader, C. M. King, and that the proceeds of the sale of the attached property were $7,900. The plaintiffs moved for a new trial, which motion was overruled by the court. Judgment was entered upon the verdict, and plaintiffs appealed to this court.

*N. B. Maxey, C. L. Jackson,* and *Wm. T. Hutchings,* for appellants.

*Wm. H. H. Clayton, James Brizzolari, Jas. B. Forrester, J. C. Hodges, A. J. Nichols,* and *J. H. Koogler,* for appellees.

TOWNSEND, J. The appellants, in their brief, have stated four objections to the deed of assignment in this case, as showing upon its face that it is fraudulent in law: First. "For the reason that it fails to convey all the debtor's property, and at the same time makes several classes of preferred creditors, who in each instance are compelled to give a full release of their indebtedness as a condition of sharing

the benefits of such preferences." Second. "If the prop-
erty or any part of it, described in Schedule C, does not
pass, under the terms of the deed, to the assignee, and Belt
cannot claim it under the homestead or exemption laws, the
deed is void." Third. "Belt chose to make his assignment
in the Indian Territory, and the execution, interpretation,
and validity of it must be determined by its laws." Fourth.
"Belt decided for himself that he was entitled to the benefits
of the exemption laws of both Arkansas and the Indian Ter-
ritory. He did not leave it—as he might appropriately have
done—to the law to determine for him what property he
was entitled to exempt, if any, nor in what jurisdiction he
might assert the right. It was his plain intention to reserve
to himself all the property set forth in Schedule C, and not
to convey the title to it to his assignee, and he could not
have used plainer or more appropriate language to effect
his purpose. He might have made any disposition of prop-
erty thus excepted, no matter how much, or how valuable;
and his assignee could never have claimed any right or title
to the same, or recovered it under the deed for the creditors,
for no such rights passed to him by the deed." The law
regulating "assignment for the benefit of creditors" in force
in the Indian Territory at the date of the execution of the
deed of assignment in this case is chapter 8 of Mansfield's
Digest of the Statutes of Arkansas, which was adopted and
extended over the Indian Territory by the act of congress
approved May 2, 1890, and in construing that statute the
circuit court of appeals of the Eighth circuit has said:
"When called upon to construe the sections of the statutes
thus adopted, we deem it our duty to follow the construction
given thereto by the supreme court of Arkansas. The adop-
tion of this course as the settled rule to be followed by this
court and the court of original jurisdiction in the Indian
Territory must commend itself to all interested." Appolos
vs Brady, 1 C. C. A. 299, 49 Fed. 401. Applying the rule

Decision of
Supreme
Court of
Arkansas.

of construction thus laid down to the objections of appellant, it becomes necessary to examine the decisions of the supreme court of Arkansas. It will first be observed that the deed of assignment in this case, after describing specifically the property conveyed to the assignee, contains the following: "And I, the said John C. Belt, hereby intending to convey unto the said C. M. King, for the purpose and trust as aforesaid, all my effects of every kind and description, wherever situated, both real, personal and mixed, all notes, book accounts, and choses in action, whether described in this deed or not, save and except only such real and personal property as is exempt under the law from forced sale, a schedule of the property so claimed by the said John C. Belt, to be exempt from forced sale, is hereto attached, marked 'Schedule C,' and made a part hereof." In Baker vs Baer, 59 Ark. 503, 28 S. W. 28, a deed of assignment conveyed all the lands and other property of the assignor, "except what are exempt to him by the laws of the state," the exemptions being fully described in a schedule attached. The lands claimed as exempt had never been impressed as a homestead. The court held that, since exempt property was only reserved, the title passed to assignee. The court observe: "The law, upon the evidence of the assignor, determines that the lands claimed as a homestead were never so impressed, and therefore are not exempt. Hence the title passed absolutely to the assignee. The language of the granting clause is unambiguous, and should be held to mean what it says. Only property 'exempt' was reserved. This property was not reserved. This is not a case of conveying all in the deed, and at the same time secretly or intentionally witholding a portion for the debtor's benefit. All was conveyed by the definite description; and this, so far as the deed itself and the claim of exemptions thereto attached is concerned, argues most strongly the good faith and honesty of the transaction." But, if the

grantor knew that the lands were not exempt, it was pointed out to his creditors, and is reason for saying there was no fraudulent withholding. "A reservation of the kind mentioned would not invalidate the assignment." An instruction to the effect that such a reservation would render the assignment fraudulent and void was erroneous. This is directly applicable to this case. In King vs Dry-Goods Co., 60 Ark. 1, 28 S. W. 514, heard on demurrer, the identical deed of assignment in this case was passed upon by the supreme court of Arkansas, and, after quoting the clause in the deed hereinbefore set out, the court said: "Is the deed void upon its face? is the question in the case. Such deeds of assignment have been upheld by the decisions of this court holding that the debtor, in making assignment of his property for the benefit of creditors, may exact releases from creditors as a condition of preference under the deed, where he dedicates 'all of his property not exempt by law to the payment of all of his creditors; not necessarily to the payment of all in equal proportions.' McReynolds vs Dedman, 47 Ark. 351, 1 S. W. 552." The court say further: "As to the claim of exemption in the deed, there is no difference in principle between the deed of assignment in this case and the deed in the case of Baker vs Baer, 59 Ark. 503, 28 S. W. 28, which was held not objectionable; the ruling in which case as to this question is approved and adopted in this." The court further say that the act of congress of May 2, 1890, putting in force chapter 8 of Mansfield's Digest, title "Assignments for the Benefit of Creditors," and chapter 60 of said digest, title "Executions," that the "assignor had the right to claim his exemptions as under the laws of the state of Arkansas." It is declared to be the established law of Arkansas, in accord with much authority elsewhere, "that a stipulation for a release in a general assignment, which is made only as a condition of preference, does not invalidate the instrument." Wolf vs Gray, 53 Ark. 79, 13 S.

Assignment
Exemption.

Assignment.
Release.

W. 512. It was said by the circuit court of appeals, when the demurrer in this case was disposed of by that court, that "an assignment that conveys all the debtor's property is not a partial assignment; and one that conveys all his property, and then, by mistake, reserves or exempts from the conveyance the property of another that the assignor could not in any way convey, none the less conveys his entire property, and cannot be obnoxious to the objection that it is a partial assignment, * * * and the assignee may plead and prove the ownership of the property described in the assignment to establish this fact, and to maintain his right to the property assigned. * * * In our opinion, the interplea stated a good cause of action for the recovery of the attached property, and the demurrer should have been overruled." Belt vs Robinson, 11 C. C. A. 39, 63 Fed. 92. The court below followed this decision in its first, second and third instructions to the jury, and the jury, by its verdict, found for the appellees. The fourth instruction is the law as declared by the supreme court of Arkansas in Lowenstein vs Finney, 54 Ark. 128, 15 S. W. 153.

The statement at the close of appellant's brief that they should have been permitted to show that only 87 per cent. of the fund was distributed, as we view it was simply an effort to violate the agreement and stipulation of record made on the 15th of December, 1893, and the court below was right in holding that whatever rights the appellee King has as assignee were fixed by the conditions existing at the date of his filing his intervention. The counsel have been diligent in citing authorities, but the rule of construction stated in Appollos vs Brady, supra, together with the ruling in the Arkansas supreme court in the hearing, involving this same assignment, in King vs Dry-Goods Co., supra, and the decision of the court of appeals of the Eighth circuit in disposing of the demurrer in this case,—Belt vs Robinson,

*Interpretation of statutes.*

(24)

supra,—has left but little for this court to do except to cite the Arkansas decisions construing deeds of assignment in the various cases that have received the consideration of that court. We think the assignment in this case was good, and the judgment of the court below was correct, and it is therefore affirmed.

THOMAS, J., concurs.